[Civ. No. 41488. Second Dist., Div. Two. Dec. 21, 1973.]

ALEX MIRANDA, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD
Defendant and Appellant;
NORRIS INDUSTRIES, Real Party in Interest and Respondent.

## Counsel

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Melvin R. Segal, Deputy Attorneys General, for Defendant and Appellant.

Henry R. Fenton and Jonathan B. Steiner for Plaintiff and Respondent.

No appearance for Real Party in Interest.

## Opinion

**COMPTON, J.**—The California Unemployment Insurance Appeals Board (the Board) appeals from a judgment of the Superior Court of Los Angeles County granting a peremptory writ of mandate directing the Board to in turn order the California Department of Human Resources Develop-

ment (the Department) to pay Alex Miranda (petitioner) benefits claimed to be due him under the California Unemployment Insurance Code for the period March 16, 1971 to October 18, 1971.

## FACTS

Petitioner was discharged by his employer Norris Industries on February 8, 1971. Subsequently he filed a claim for unemployment insurance benefits. On March 12, 1971, Norris Industries, after receiving notice of petitioner's claim, informed the Department in writing that petitioner had been discharged for misconduct thus rendering him ineligible for the claimed benefits. Three days later petitioner was interviewed by a representative of the Department for the purpose of determining petitioner's eligibility.

Unemployment Insurance Code section 1256 provides that an individual is ineligible for benefits if the *director* of the Department finds that the claimant voluntarily terminated his employment or was discharged for misconduct.

At the interview petitioner was told of his employer's allegations and was given an opportunity to present evidence supporting his claim of eligibility. The interviewer made a determination that petitioner was eligible and delivered to him a check for $61.

Approximately seven days later Norris Industries objected to the determination of eligibility and requested the Department to reconsider. A supervisor of the original interviewer reviewed the matter pursuant to Unemployment Insurance Code section 1332, subdivision (a),[1] and basing his decision on the same evidence developed at the interview concluded that petitioner was ineligible. Petitioner was notified that no further payments would be forthcoming.

Petitioner unsuccessfully pursued the administrative remedies open to him by appealing first to a referee and then to the Board. Both the referee and the Board determined that petitioner had been discharged for misconduct and denied petitioner's claim.

---

[1]Unemployment Insurance Code section 1332, subdivision (a), provides: "(a) Any determination provided for in this article may for good cause be reconsidered by the department within 15 days after mailing or personal service of the notice of determination. Notice of any reconsidered determination shall be given, to the claimant and any employer or employing unit which received notice under Sections 1328 and 1331, and the claimant or employer may appeal therefrom in the manner prescribed in Section 1328."

Additionally, the Board specifically upheld the application of Unemployment Insurance Code section 1332, subdivision (a), and the act of reconsideration by the supervisor.

Petitioner next sought a writ of mandate, which is the subject of this appeal, to compel payment to him of benefits claimed to be due for the period of time between the supervisor's determination of ineligibility and the decision of the referee upholding that determination.

Petitioner has thus exhausted his administrative remedies and at this time only court review of the Board's decision upholding the determination of ineligibility is still pending.

In the limited phase of the litigation involving petitioner's claim which now engages our attention, the superior court determined that the Department had wrongfully refused to make payments during the period preceding the referee's decision that petitioner was ineligible.

Inferentially the superior court determined that even though the referee's decision of ineligibility be ultimately approved, petitioner was entitled to receive payments in the interim period, subject to later recoupment by the Department.

Specifically the superior court concluded that petitioner's right to receive payments arose at the time the original interviewer declared him to be eligible and that the reconsideration by the supervisor authorized by Unemployment Insurance Code section 1332, subdivision (a), without an evidentiary hearing, deprived petitioner of due process of law and violated controlling federal statutes.

## DISCUSSION

The system of unemployment insurance is a federal-state cooperative program under which federal funding is provided to state programs that conform to federal requirements. (42 U.S.C.A. §§ 501-503.) Those requirements that are relevant here are contained in United States Code Annotated, title 42, section 503, which provides in part that the state program must be (1) "reasonably calculated to insure full payment of unemployment compensation when due"; and (2) must provide an "opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied."

California's procedure has qualified for federal funding. That procedure consists of an initial administrative determination as to eligibility followed

by a two-step process of appeal first to a referee and then to the Board, a process open to claimant and employer alike. (Unemp. Ins. Code, §§ 1326-1328, 1336.) This appeal process satisfies the "fair-hearing" requirement for claimants initially determined to be ineligible.

Responsibility for the initial eligibility decision rests with the Director of the Department of Human Resources (Director) who is the Department's executive officer. (Unemp. Ins. Code, § 301.) The Director is empowered to employ various personnel to assist him in administering the program. (Unemp. Ins. Code, § 311.) His decision as to eligibility of a claimant is based upon evidence developed at the interview conducted with the claimant at which, in case of a dispute, both the employer and the claimant may present evidence supporting their respective positions.

If the Director's determination favors the claimant, payment of benefits begins promptly. If on appeal by the employer to the referee the claimant is found to be ineligible, benefits cease. On the other hand, if the referee upholds the finding of eligibility, payment of benefits continues even though the employer perfects an appeal to the Board. (Unemp. Ins. Code, § 1335, subd. (b).) By the same token if the Director's determination is that the claimant is ineligible, benefit payments would not commence until on appeal by the claimant, the referee or the Board reversed such determination. The average time which elapses between the Director's determination and a decision by the referee on a claimant's appeal is 54 days.

Petitioner here contends that because the interviewer initially determined that he was eligible, the benefit payments became due and that the Director was powerless to change that decision upon review by the supervisor without a "due process" hearing. In taking this position petitioner relies on *California Human Resources Dept.* v. *Java,* 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347], and *Goldberg* v. *Kelly,* 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]. We disagree.

In *Java,* the court was confronted with an attack on certain provisions of Unemployment Insurance Code section 1335 which then provided that after an initial determination by the Director that the claimant was eligible, the filing of an appeal by the employer caused the payment of benefits to be suspended until a decision was rendered on appeal to the referee.[2] The time usually consumed by such appeal was from six to seven weeks.

---

[2]Following *Java*, the Legislature amended Unemployment Insurance Code section 1335 to provide: "(c) If benefits for any week are payable in accordance with a determination by the department, or a referee issues a decision allowing benefits,

The employer in *Java* failed to provide evidence of ineligibility to the Director who found the claimant eligible. The employer then filed an appeal thereby causing payments of benefits to be suspended. The court held that compensation became "due" when the Director determined that the claimant was eligible and that permitting the employer to effect a suspension of payments by the unilateral action of filing an appeal was contrary to the "prompt payment" requirement of United States Code Annotated, title 42, section 503, stating: "It would frustrate one of the Act's basic purposes . . . to permit an employer to ignore the initial interview or fail to assert and document a claimed defense, and then effectuate cessation of payments by asserting a defense to the claim by way of appeal." (*Java,* at p. 134 [28 L.Ed.2d at p. 675].) That is not what happened here.

■ Pursuant to the authority of Unemployment Insurance Code section 1332, subdivision (a), the Director in the instant case after first finding the petitioner to be eligible, reconsidered his decision and on the basis of the information developed in the original interview, found petitioner ·to be ineligible. No appeal by the employer was involved The action was not automatic and the employer's objections had been documented. These are significant factual differences from the situation in *Java.*

More importantly, however, in *Java* the ultimate and final decision of the director as reached in the initial interview was that the claimant was eligible. Thus the court there simply reinforced the authority of the director by holding that it was upon his decision that the payments became "due" and interpreted United States Code Annotated, title 42, section 503, in a broad sense by stating that " 'when due' was intended to mean at the earliest stage of unemployment that such payments were *administratively feasible* after giving both the worker and the employer an opportunity to be heard." (*Java,* at p. 131 [28 L.Ed.2d at p. 674].) (Italics added.)

Read in context, *Java* does not (as contended by petitioner) stand for the proposition that the Director is straight-jacketed by the initial interviewer's determination. The following very crucial language from *Java,* at page 133 [28 L.Ed.2d at page 675] is instructive:

"It seems clear therefore that the California procedure, which suspends payments for a median period of seven weeks pending appeal, after an

such benefits shall be promptly paid regardless of any appeal. If the determination of the department or the decision of the referee is finally reversed, no employer's reserve account shall be charged with benefits paid pursuant to this subdivision."

*initial determination of eligibility* has been made, is not 'reasonably calculated to insure full payment of unemployment compensation when due.' (Italics added.)

"We are not persuaded by appellant's suggestion that the initial determination is clouded with sufficient uncertainty as to warrant withholding benefits until the appeal is decided to protect the interests of the State or of the employers. *The California procedure for initial determinations is effective in insuring that benefits are limited to legally eligible claimants. From 95%-98% of ineligible claimants are screened out at this stage.* The primary inquiry at the preliminary interview is to examine the claimant's basic eligibility under the California statute." (Italics added.)

From the foregoing it is clear that in invalidating the procedure for suspending payments during the processing of an appeal by the employer, the court relied heavily on the effectiveness of the California procedure for determining eligibility and indicated approval of that procedure.

Simply stated then the procedure which the California Legislature has structured and upon which the court placed its imprimatur involves a determination of eligibility by the Director which is based upon input from both the claimant and the employer, an interview with the claimant, an initial decision by the interviewer and a review of that decision by the Director within 15 days.

In following that procedure the Director is required to make a vast number of eligibility decisions and a large number of interviewers are necessarily required to process claims. The skill of these interviewers will vary and their experience, they being at the lowest level of the administrative machinery, will necessarily be less that that of their supervisors. Considering the importance of the eligibility decision, reasonable and sound administration would dictate that the Director be given authority to review his own decisions and correct patent errors. The most feasible administrative procedure for implementing such authority is to delegate the authority for the final decision to supervisory personnel. The 15-day period which the Legislature provided is reasonable and considerably shorter than the six to seven weeks' delay that troubled the court in *Java*.

The 15-day period of time allowed by the statute for a redetermination bears a reasonable relation to the time an average wage earner waits between pay checks. A common pay period is every 2 weeks (14 days). Some other common pay periods are (a) once a month, and (b) one-half on the first and one-half on the 15th of the month.

It could well be that the Legislature believed that the existence of the ability to reconsider would serve to expedite the initial determination. To deny the state the power to expeditiously correct errors in its administrative decisions can only result in greater delay in instituting payment to many deserving and eligible claimants. This dilemma was very wisely perceived by Mr. Justice Black in his dissent in *Goldberg, supra*, at page 279 [25 L.Ed.2d at page 305] when he stated ". . . the inevitable result of such a constitutionally imposed burden [pre-termination evidentiary hearing] will be that the government will not put a claimant on the [welfare] rolls initially until it has made an exhaustive investigation . . . ."

Furthermore, the authority to reconsider can benefit claimants who are declared ineligible in the initial interview by instituting payments in a shorter period of time than would be the case if the claimant was forced to appeal.

California procedure is consonant with federal requirements. Payments are promptly made "when due." Those payments are "due" when the Director makes his final determination that a claimant is eligible. That final determination may be reached in the initial interview or it may be reached upon reconsideration within the statutory period.

*Goldberg*, as well as other cases cited by petitioner here, involved persons who had previously been administratively determined to be eligible for benefits which were terminated on the basis of after-acquired information. Hence those cases are inapposite. The administrative decision under scrutiny here involves that of initial eligibility.

The very broad general language of the federal requirements which serve to guide the states in administering the Unemployment Insurance program is a clear recognition of the desirability of permitting the states some flexibility in achieving the dual objective of prompt payment to the eligible and denial of payment to the ineligible. It is not the role of the courts to further legislate on the subject by striking down a procedure that the Legislature of California and apparently the federal executive branch considers to be a reasonable method of achieving the objectives of the program.

Nor does our responsibility to determine if legislative action offends the constitutional requirement of due process of law lead us to a determination that California's procedure is "unfair" or "unconscionable." Due process of law has a broader base and stems from deeper roots than the

notion of a single judge or group of judges as to what is "unfair." It certainly cannot be said that the Legislature of California, which has created a myriad of programs, funded by many millions of dollars, to relieve the hardships of the citizens of this state, is insensitive to the needs of the unemployed. Thus the very reasonable provision for a 15-day period in which the Director may without a full blown adversary hearing reconsider his decision, does not offend the conscience nor run contrary to our traditional notions of fair play which form the contours of due process of law.

The judgment is reversed and the superior court is directed to quash its peremptory writ of mandate, and enter a judgment denying the petition.

Roth, P. J., and Beach, J., concurred.